UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE and JANE DOE, individually and as parents and next friends of DOE CHILD, a minor, <br><br> Plaintiffs, <br><br> vs. <br><br> JENNY GROSCH and COMMUNITY CONSOLIDATED SCHOOL DISTRICT 15, <br><br> Defendants. | 17 C 1214 <br><br> Judge Gary Feinerman |

### MEMORANDUM OPINION AND ORDER

John Doe and Jane Doe, on their own behalf and as parents of Doe Child ("D.C."), filed this suit in the Circuit Court of Cook County, Illinois, against Community Consolidated School District 15 and Jenny Grosch, the principal of D.C.'s public elementary school, bringing federal and state law claims arising from his alleged bullying at school. Doc. 1-1. After removing the suit to federal court, Doc. 1, the Does moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint, Doc. 13. The motion is granted as to the federal claims, which are dismissed without prejudice. If the Does do not attempt to replead those claims, or if they attempt to do so and fail, the court will exercise its discretion under 28 U.S.C. § 1367(c)(3) to relinquish supplemental jurisdiction over the state law claims (over which there is no diversity jurisdiction) and remand them to state court.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the Does' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to the Does as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

D.C., born in 2002, attended public elementary school in a northwest suburb of Chicago from Summer 2009 to Spring 2014. Doc. 1-1 at ¶¶ 2, 11, 14. D.C. suffers from several psychological conditions, including Mixed Receptive-Expressive Language Disorder, Predominantly Inattentive Type Disorder, and Attention Deficit Hyperactivity Disorder. *Id*. at ¶ 5. A serious manifestation of those conditions is that D.C. takes all statements literally, regardless of context or tone. *Id*. at ¶ 8.

D.C. became a target of bullying at school because of his disabilities, as Grosch and the school's other faculty and staff were aware. *Id*. at ¶¶ 9-10. Faculty and staff instructed D.C. not to "tattle" on classmates who bothered him; because of his disabilities, D.C. understood this to mean that he should never report any bullying, no matter how severe. *Id*. at ¶¶ 16-17.

During winter, the school typically maintained a large snow pile on the playground. *Id*. at ¶¶ 28-29. As the faculty and staff knew, children often played behind the snow pile, where they could not be seen from the school doors. *Id*. at ¶¶ 33-34. Although the faculty and staff were responsible for supervising students during recess, they typically remained near the doors during outdoor recess breaks in the winter. *Id*. at ¶ 34. On at least two occasions between

December 2013 and February 2014, a group of students brought D.C. behind the snow pile, held him face down on the ground, and gyrated against his backside while yelling "ride the [D.C.] train" and "ride the [D.C.] horse." *Id*. at ¶ 38.

In January 2014, the Does became increasingly concerned by changes in D.C.'s behavior, including his gyrating on others. *Id*. at ¶ 48. Apparently after discussing the bullying incidents with D.C., the Does met with Grosch on February 27 to inform her of what had happened. *Id*. at ¶ 49. The next day, Grosch questioned D.C. and other children thought to be involved, and then reported her findings to the Does, telling them that a known bully of D.C had organized a "bull-riding game" with D.C.'s consent. *Id*. at ¶¶ 50-52. Grosch told the Does that she would ensure that the offending students met with and apologized to D.C. *Id*. at ¶ 53. The Does feared that such a meeting would embarrass and distress D.C., and they asked Grosch to remedy the situation in another way, but she did not suggest an alternative. *Id*. at ¶¶ 54-55. Around the same time, a student pushed D.C. to the ground during recess. *Id*. at ¶ 57.

Fearing further abuse and concerned that the school was not taking adequate protective action, the Does removed D.C. from the school and eventually enrolled him at a private school. *Id*. at ¶¶ 60-61. D.C. continues to suffer emotional distress from the incidents. *Id*. at ¶ 62. Grosch never disciplined the students who bullied D.C. or the teachers who failed to supervise the students during recess. *Id*. at ¶¶ 63-64.

**Discussion**

The Does' federal claims, which arise under 42 U.S.C. § 1983, allege violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Id*. at ¶¶ 122-142. The § 1983 claims against the District must satisfy the municipal liability standards set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). The Does

have clarified that the federal claims against Grosch are official capacity claims, Doc. 18, making them identical to the *Monell* claims against the District. *See Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself."). The federal claims can survive, then, only if the Does' allegations establish a basis for municipal liability under *Monell*.

"A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). To state a *Monell* claim, the plaintiff must allege facts sufficient to show that a municipal employee's unconstitutional act was caused by: "(1) an express [municipal] policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citation omitted); *see also Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). In addition to showing that the municipality acted culpably in one of those three ways, the plaintiff must allege causation, meaning that the municipality, "through its deliberate conduct, … was the 'moving force' behind the injury alleged." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

The Does seek to establish *Monell* liability in the second manner described above, arguing that three District customs caused the bullying of D.C. First, the Does claim that the teachers at D.C.'s school typically stayed close to the school doors during outdoor recess breaks

4

in the winter, which prevented them from seeing behind the snow pile, where D.C. was assaulted. Doc. 1-1 at ¶¶ 32-36, 88. But to base *Monell* liability on a governmental custom, a plaintiff must show that an activity "was so persistent and widespread that [municipal] policymakers should have known about the behavior." *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). In Illinois, the final policymakers for school administration are district school boards. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998). The Does do not allege that Grosch or any other school employee, rather than the school board, had policymaking authority over this matter. At most, then, the Does have described a custom at D.C.'s school, not a custom of the District, and they give no reason why the District was or should have been aware that teachers at a single elementary school sometimes failed to adequately supervise outdoor recess breaks. Consequently, the Does' *Monell* claim cannot rest on this alleged custom. *See Latuszkin*, 250 F.3d at 505 ("[The plaintiff's] complaint must be dismissed … because he claimed no more than a policy or custom of the CPD. Nowhere did he claim a policy or custom of the City."); *Classroom Teachers of Dall. v. Dall. Indep. Sch. Dist.*, 164 F. Supp. 2d 839, 849 (N.D. Tex. 2001) ("[A]llegations of specific instances of misconduct by the Principal at one school … do not constitute allegations of a persistent, widespread practice of [District] officials.") (internal quotation marks omitted).

Second, the Does claim that the District has a custom of failing to sufficiently investigate bullying or to discipline offenders. Doc. 1-1 at ¶ 88, 95-100. To give rise to *Monell* liability, municipal employees' conduct must occur frequently enough to give rise to a reasonable inference that the public employer "is aware that public employees engage in the practice and do so with impunity." *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) (internal quotation marks omitted). While there is no clear consensus as to how often the offending conduct must occur to

5

constitute a custom, "it must be more than one instance, or even three." *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (internal quotation marks and citation omitted). The Does have pointed to only one allegedly insufficient bullying investigation: Grosch's investigation of the incidents involving D.C. It follows that this alleged custom, like the first, is not sufficiently widespread to support a *Monell* claim. *See Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) ("[T]hree incidents where vehicle owners were erroneously told that their vehicles were not at Lot 6 do not amount to a persistent and widespread practice.") (internal quotation marks omitted).

The recently decided *White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016), does not warrant a different result. The plaintiff in *White* alleged that the Chicago Police Department had a custom under which officers would submit arrest warrant applications without sufficient factual support. *Id*. at 839. As evidence of the custom, the plaintiff identified only one instance (his own case) in which an officer submitted a factually deficient application, but he also alleged that the city's standard printed form for warrant applications did not require specific factual support. *Id.* at 844. The Seventh Circuit found that, taken together, the individual allegation *plus* the standard form provided sufficient evidence of a systematic practice to make out a *Monell* claim. *Ibid.* Here, there is no equivalent to the standard form, as the Does point to nothing besides the single allegedly insufficient investigation of D.C.'s bullying.

Third, the Does claim that the District failed to adequately train staff and faculty to detect bullying and respond with appropriate discipline. Doc. 1-1 at ¶ 91, 101. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To give rise to this kind of liability, the failure to train "must amount to deliberate indifference to the rights of persons with whom the

6

untrained employees come into contact." *Ibid*. (internal quotation marks omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference" in the failure-to-train context. *Id*. at 62 (internal quotation marks omitted); *see also Johnson v. Cook Cnty.*, 526 F. App'x 692, 696-97 (7th Cir. 2013). The Does argue that widespread violation of the District's bullying policy at D.C.'s school evidenced an obvious need for training. Doc. 1-1 at ¶¶ 91, 101. But, as noted, the Does point only to the incidents involving their son, and therefore fail to make out a sufficient pattern of constitutional violations. *See Gable*, 296 F.3d at 538.

The Supreme Court has left open the possibility that *Monell* failure-to-train liability can be shown by a single incident where constitutional violations are a "highly predictable consequence" of a failure to train; for example, if a police department failed to train recruits on the use of deadly force. *Connick*, 563 U.S. at 63-64; *see also Johnson*, 526 F. App'x at 696-97. But the Does forfeited any "single-incident" argument by failing to raise it in their opposition brief. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument … .").

Because the Does do not state a basis for *Monell* liability, the court need not address Defendants' arguments that the Does have not alleged actual due process or equal protection violations. The federal claims are dismissed, but the dismissal is without prejudice and the Does

7

will be given one opportunity to replead. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (noting that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed"). If the Does do not attempt to replead their federal claims, or if they try to do so but fail, the court will exercise its discretion to relinquish its supplemental jurisdiction, 28 U.S.C. § 1367(a), over the state law claims and remand them to state court.

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of § 1367] if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

None of the exceptions apply here. Plaintiffs will not have to refile their state law claims, as those claims, having arrived in federal court via removal, will be remanded to state court. Substantial federal judicial resources have not yet been committed to the state law claims. And it is not clearly apparent at this early stage how the state law claims (which allege intentional infliction of emotional distress, and willful and wanton conduct) should be resolved. It follows that relinquishing jurisdiction over the state law claims is the appropriate course under § 1367(c)(3). *See RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994).

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted as to the federal claims and denied without prejudice as to the state law claims. The federal claims are dismissed without prejudice. The Does have until September 29, 2017 to file an amended complaint. If they do not file an amended complaint, or if they do so and the federal claims continue to fail to state a viable claim, the federal claims will be dismissed with prejudice and the state law claims will be remanded to state court.

September 8, 2017 _____
United States District Judge